UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JARED MICHAEL GRANT TAYLOR, | Case No. 14-CV-0722 (PJS/TNL) |
| Plaintiff, | |
| v. | ORDER |
| CITY OF AMBOY, et al., | |
| Defendants. | |

Jonathan A. Strauss, Kenneth C. Edstrom, Lorenz F. Fett., Jr., and Sonia L. Miller-Van Oort, SAPIENTIA LAW GROUP, PLLC, for plaintiff.

Jon K. Iverson, Stephanie A. Angolkar, and Susan M. Tindal, IVERSON REUVERS CONDON, for defendants Cities of Bloomington, Dundas, Faribault, Lonsdale, Montgomery, Northfield, and Owatonna, and defendants Lee Phillippe, Eric Kline, Matt Knutson, David Orr, Patrick Nelson, Mark Dukatz, Jeffrey Gigstad, Billy Houts, Steve Klostermeier, Mischelle Watkins, and Kyle Parr.

This matter is before the Court on the motion of plaintiff Jared Taylor for an award of attorney's fees and costs under 18 U.S.C. § 2724. Taylor seeks attorney's fees in the amount of $117,383.14 and costs in the amount of $10,523.69 from a group of defendants to whom the Court will refer as the "Remaining Defendants."[1] The Remaining Defendants concede that Taylor is entitled to an award of attorney's fees and

---

[1] The "Remaining Defendants" are the Cities of Bloomington, Dundas, Faribault, Lonsdale, Montgomery, Northfield, and Owatonna, and individual defendants Lee Phillippe, Eric Kline, Matt Knutson, David Orr, Patrick Nelson, Mark Dukatz, Jeffrey Gigstad, Billy Houts, Steve Klostermeier, Mischelle Watkins, and Kyle Parr.

costs, but they argue that Taylor's request for attorney's fees is inflated by over $31,000.00 and his request for costs is inflated by about $6,000.00. After reviewing the materials submitted by the parties, the Court finds that Taylor is entitled to recover $105,357.04 in attorney's fees and $4,707.53 in costs.

I. BACKGROUND

Taylor filed this action against 34 municipalities and counties—along with numerous employees designated as "John Doe" or "Jane Doe"—alleging that the defendants had unlawfully obtained, disclosed, or used information contained in his driver's-license record on hundreds of occasions in violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721 *et seq*. *See generally* ECF No. 1. Following discovery, Taylor amended his complaint to identify by name the individual employees who had unlawfully accessed his driver's-license record. ECF No. 97.

During the three-year course of this litigation, the claims against some of the defendants were dismissed, and the claims against other of the defendants were settled, leaving only the Remaining Defendants. After the case was scheduled for trial, the Remaining Defendants extended—and Taylor accepted—an offer of judgment in the amount of $55,100.00. The parties also agreed that Taylor could seek an award of the reasonable attorney's fees and costs that he had incurred in litigating his claims against

the Remaining Defendants. ECF No. 186-1. As noted, Taylor now seeks attorney's fees in the amount of $117,383.14 and costs in the amount of $10,523.69.

## II. ATTORNEY'S FEES

The parties agree that Taylor prevailed on his DPPA claims against the Remaining Defendants and therefore is entitled to recover reasonable attorney's fees. *See* 18 U.S.C. § 2724(b)(3). The starting point for calculating a fee award is the lodestar—that is, "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (finding the lodestar method to be the "most useful starting point for determining the amount of a reasonable fee").

### *A. Hourly Rate*

Taylor is represented by a team of six lawyers and three legal assistants who have ably represented numerous plaintiffs in DPPA cases in this District. Taylor argues that his attorneys should be compensated at the following rates:

- Larry Fett (35 years of legal experience) at $450.00 per hour;

- Kenneth C. Edstrom (33 years) at $400.00 per hour;[2]

---

[2]Although Taylor states in his brief that Edstrom charges an hourly rate of $450.00, ECF No. 189 at 14, the evidence provided in his counsel's declaration and attached exhibits indicates that, at least in connection with this case, Edstrom's rate was only $400.00 per hour. *See* ECF No. 191 ("Miller-Van Oort Decl.") ¶ 17; *id.* Ex. A, ECF No. 191-1, at 12.

- Jonathan Strauss (19 years) at $400.00 per hour;

- Sonia Miller-Van Oort (19 years) at $400.00 per hour;

- Robin Wolpert (15 years) at $400.00 per hour; and

- Kenneth Fukuda (4 years) at $225.00 per hour.[3]

ECF No. 189 at 14-15; ECF No. 191 ("Miller-Van Oort Decl.") ¶ 17. The billing rate of all three legal assistants—who recorded their time under the initials "D.H.," "P.A.R.," and "K.L.T."—is $100.00 per hour. Miller-Van Oort Decl. ¶ 17; *id.* Ex. A, ECF No. 191-1.

In support of his fee request, Taylor submitted an affidavit from Marshall Tanick, a prominent litigator in the Twin Cities. Based on his knowledge of the rates charged in the Twin Cities for comparable legal work, Tanick opines that the hourly rates charged by Taylor's legal team were "very reasonable in light of the background, experience and quality of the work performed by them in this matter." ECF No. 190 ¶ 8; *see also Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) ("A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated."). Moreover, in other DPPA cases handled by members of the same legal team, similar hourly rates have been found reasonable by judges of this District. *See, e.g., Myers v. Aitkin Cty.*, No. 14-CV-0473 (JRT/LIB), 2017 WL 1134575, at *1-2 (D. Minn. Mar. 27, 2017)

---

[3]Fukuda is not mentioned in Taylor's memorandum in support of his fee petition, but the time that Fukuda billed is included in the Miller-Van Oort Declaration and accompanying exhibits. *See* Miller-Van Oort Decl. ¶ 17; *id.* Ex. A at 2.

(awarding attorney's fees for the same attorneys based on the same hourly rates in a similar DPPA action); *Rasmusson v. City of Bloomington*, No. 12-CV-0632 (SRN/JSM), 2013 WL 3353931, at *2-3 (D. Minn. July 3, 2013) (awarding attorney's fees based on hourly rates between $100.00 and $400.00 in a similar DPPA action).

In light of these authorities, and in light of the Court's own knowledge of the prevailing rates in the Twin Cities legal market, the Court finds that the rates charged by the attorneys and legal assistants who represented Taylor are reasonable. *See Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) ("When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates.") (citation omitted).

### B. *Number of Hours Reasonably Expended*

There is no dispute that the Remaining Defendants should pay for any task that related solely to a claim against one of the Remaining Defendants (assuming that the amount of time billed was reasonable and is adequately supported). But many of the tasks performed by Taylor's attorneys and legal assistants—for example, attending a Rule 16 conference or researching a particular legal issue—related both to claims against the Remaining Defendants and to claims against other defendants. To calculate the share of these fees that should be paid by the Remaining Defendants, Taylor has used what he calls a "per-access analysis." ECF No. 189 at 5.

Taylor has divided the litigation into four stages; for example, the first stage begins with the filing of the original complaint and ends with the entry of the Court's order granting in part the defendants' motions to dismiss. For each stage, Taylor has identified the total number of accesses of his driver's-license record that were being litigated, and Taylor has identified the number of those accesses that were attributable to the Remaining Defendants. For example, during the first stage of the litigation, there were 353 accesses that were at issue, and 45 (or about 12.7%) of those accesses were attributable to the Remaining Defendants. Taylor then seeks to hold the Remaining Defendants responsible for their share of the time that his attorneys devoted to general tasks. ECF No. 189 at 4-7.

The Remaining Defendants do not seem to object to this methodology, but they argue that Taylor got some of his numbers wrong. *See generally* ECF No. 194; ECF No. 196 ("Angolkar Aff.") Ex. 1, ECF No. 196-1. Specifically, the Remaining Defendants argue that "'sequential accesses occurring within a several-minute time span should be considered as one obtainment rather than several.'" ECF No. 194 at 2 n.2 (quoting *Tichich v. City of Bloomington*, 835 F.3d 856, 867 (8th Cir. 2016)); Angolkar Aff. ¶ 3. Thus, say the Remaining Defendants, there were 296 (instead of 353) accesses that were being litigated during the first stage of the case.

The Court will accept Taylor's allocation. Taylor's allocation is required to be reasonable, not perfect, and the Court finds that Taylor's methodology and its application are reasonable.

The Remaining Defendants also object to numerous specific entries on the time sheets of Taylor's attorneys. The Court will now march through those objections.

1. Agreed-Upon Reductions

In response to objections from the Remaining Defendants, Taylor has withdrawn a number of time entries. *See* ECF No. 197 at 8-9. Consequently, the Court will not include the following in calculating the lodestar:

- March 18, 2014: "(Cities) Telephone conference w/ Jared re Morristown accesses; inquire with Daneka re same"—billed by Strauss for .2 hours ($80.00) (Miller-Van Oort Decl. Ex. A at 2; ECF No. 194 at 13; ECF No. 197 at 8-9);

- March 18, 2016: "Scanned Taylor depo exhibits & saved to server; added depo transcript & exhibits to docs to produce to defendants; re-drafted service letter & affidavit of service to reflect changes"—billed by P.A.R. for .636 hours ($63.60) (Miller-Van Oort Decl. Ex. A at 9; ECF No. 194 at 22; ECF No. 198 ("Strauss Decl.") ¶ 17);

- April 22, 2016: "Email audit results from DPS to J. Flynn and N. Maxwell; email same to Jared for review; review same audit from DPS"—billed by Strauss for .5 hours ($200.00) (Miller-Van Oort Decl. Ex. A at 10; ECF No. 194 at 13; ECF No. 197 at 8);

- April 22, 2016: "Review email and documents from N. Maxwell regarding purported reason for Finnesgard's accesses of Jared; telephone call with Maxwell re same; draft email to Jared re

> same"—billed by Strauss for .3 hours ($120.00) (Miller-Van Oort Decl. Ex. A at 10; ECF No. 194 at 13; ECF No. 197 at 8);
>
> - December 2, 2016: "Address logistics of meet and confer with Joe Flynn re settlement"—billed by Wolpert for .1 hours ($40.00) (Miller-Van Oort Decl. Ex. A at 11; ECF No. 194 at 13; ECF No. 197 at 8); and
>
> - December 3, 2016: "Meeting with Joe Flynn to discuss Plaintiff's settlement offer"—billed by Wolpert for .3 hours ($120.00) (Miller-Van Oort Decl. Ex. A at 11; ECF No. 194 at 13; ECF No. 197 at 8).

The Court will also reduce the lodestar $437.50 in connection with Strauss's January 26, 2016 entry and $385.00 in connection with Strauss's January 28, 2016 entry. Miller-Van Oort Decl. Ex. A at 8. Taylor concedes that it was attorney Andrew Larson-Wille, and not Strauss, who performed those services, and that Larson-Wille's hourly rate was lower. ECF No. 197 at 9; Strauss Decl. ¶¶ 8-10. Finally, the Court will deduct $40.00 in connection with Strauss's February 1, 2017 entry as Strauss merely "reviewed" the notice of acceptance rather than "filed" it. Miller-Van Oort Decl. Ex. A at 11; Strauss Decl. ¶ 15. Thus, a total of $1,486.10 will be removed from the lodestar by agreement of the parties.

2. The Complaint and the Amended Complaint

The Remaining Defendants challenge a number of specific entries related to the drafting of what they call a "cookie-cutter" complaint that closely resembles the complaints filed in many other DPPA actions. ECF No. 194 at 15-16 (objecting to the

January 12, 2014, January 13, 2014, February 27, 2014, March 8, 2014, and March 13, 2014 entries). Taylor responds that this case involved "significant fact development and fact-specific arguments" and that the complaint required a significant amount of case-specific work. ECF No. 197 at 5-6; Strauss Decl. ¶ 3. Given the complexity of the case—including the large number of defendants and huge number of challenged accesses—the Court finds that the amount of time devoted to drafting the complaint is reasonable.

The Remaining Defendants also challenge the time devoted to drafting the amended complaint. ECF No. 194 at 16. Taylor has presented sufficient evidence that those time entries were reasonable and that the work was necessary to comply with Magistrate Judge Leung's orders. Strauss Decl. ¶ 4; ECF No. 197 at 6-7.

### 3. January 16, 2015

The Remaining Defendants next object to time entries regarding the attendance of Taylor's attorneys at the Rule 16 conference on January 16, 2015.

First, the Remaining Defendants complain that only one, not two, attorneys should have attended the conference. ECF No. 194 at 16-17. But this was a complex case involving dozens of defendants and hundreds of allegedly illegal acts; it was not unreasonable for two attorneys to show up at the Rule 16 conference.

Second, the Remaining Defendants object that Taylor's attorneys billed more than the 30-minute duration of the Rule 16 conference. *Id.* at 17. But the entries identified by the Remaining Defendants also covered time devoted to preparing for the Rule 16 conference and traveling to the federal courthouse. *See* Miller-Van Oort Decl. Ex. A at 3; Strauss Decl. ¶ 5. Those entries were reasonable. *See Ludlow v. BNSF Ry. Co.*, 788 F.3d 794, 803-04 (8th Cir. 2015) (concluding that it was reasonable to bill attorney travel time "'at the same hourly rate as the lawyer's normal working time'") (citation omitted).

4. March 2, 2016

The Remaining Defendants challenge a pair of entries for P.A.R. dated March 2, 2016, as duplicative. ECF No. 194 at 17. Both entries contain the same description: "Reviewed new docs produced by cities (police personnel files) for privacy-related incidents." Miller-Van Oort Decl. Ex. A at 9. Strauss states that the work was conducted before and after a lunch break, which is why the two entries are identically labeled. Strauss Decl. ¶ 6. The Court accepts Strauss's explanation.

5. May 2, 2016

The Remaining Defendants also object to Taylor's request for fees related to an in-firm conference between Wolpert and Miller-Van Oort on May 2, 2016. ECF No. 194 at 18. At the conference, Wolpert and Miller-Van Oort strategized about responding to

defendants' summary-judgment motions. *See* Miller-Van Oort Decl. Ex. A at 10. The Court overrules defendants' objection, as there is nothing unreasonable about two attorneys talking to each other about how to approach the briefing of multiple complicated summary-judgment motions.

### 6. Vague Entries

The Remaining Defendants next challenge a number of entries as vague and, thus, unreasonable. ECF No. 194 at 18-19. The Court has reviewed the entries and finds that the entries are not unduly vague, particularly in light of the explanatory material that Taylor has submitted in connection with his motion for a fee award.

### 7. Summary-Judgment Motion

Next, the Remaining Defendants challenge the 35 hours billed for responding to summary-judgment motions in May 2016. The main complaint of the Remaining Defendants is that Taylor's attorneys should have been more efficient because they had briefed the same legal issues in other cases. ECF No. 194 at 20. In response, Taylor points out that the hearing on the summary-judgment motions lasted approximately two-and-a-half hours and that new case law was published in the time between briefing and argument. Strauss Decl. ¶¶ 12-13. In addition, Taylor's response brief spanned 84 pages and addressed 7 cities and 21 individual defendants. *Id.* ¶ 12. The Court

agrees with Taylor that his attorneys did not devote an unreasonable amount of time to the summary-judgment motions.

### 8. Fee Petition

The Remaining Defendants also challenge the hours devoted to the drafting and filing of Taylor's fee petition. *See* ECF No. 194 at 20-21; *see also* Miller-Van Oort Decl. Ex. A at 11-12. The Court finds that the parties' agreement does not authorize the recovery of those fees. The offer of judgment that was accepted by Taylor provides that Taylor could petition the Court for "reasonable costs and attorney's fees solely attributed to these Defendants, *incurred to date*, as determined recoverable under 18 U.S.C. § 2724." ECF No. 186-1 at 2 (emphasis added). That offer of judgment was dated January 18, 2017; therefore, fees incurred by Taylor after that date are not recoverable. Accordingly, the Court will exclude $8,630.00 in calculating the lodestar.

### 9. October 5, 2015

The Remaining Defendants assert that they should not be required to pay attorney's fees that Taylor incurred on October 5, 2015, in connection with an inadvertent disclosure made by Taylor's counsel. ECF No. 194 at 21. The Court agrees that Taylor's attorneys should bear the cost of their own mistake. *See Brown v. Astrue*, No. 07-CV-3053, 2009 WL 1634898, at *3 (W.D. Ark. June 10, 2009) ("Counsel is not entitled to additional hours of compensation for correcting his own mistakes."). But

given that the October 5 entry is not entirely devoted to the inadvertent disclosure, the Court will reduce the entry by only half, from $280.00 to $140.00.

10. Clerical Work

The Remaining Defendants next ask the Court to reject a number of entries as representing clerical work that should have been done by a secretary and not by an attorney or legal assistant. ECF No. 194 at 21-22. Ordinarily, clerical tasks "cannot fairly be accounted for at an attorney's, or even a paralegal's, billing rate." *Rosen v. Wentworth*, 13 F. Supp. 3d 944, 953 (D. Minn. 2014). The Court has reviewed the challenged entries and Taylor's explanation of those entries and finds that only two—the two January 13, 2016 entries—are attributable to clerical work that did not require any specialized legal analysis or knowledge. *See* Miller-Van Oort Decl. Ex. A at 7. A total of $250.00 will be deducted from Taylor's request.

11. Depositions Not Related to the Remaining Defendants

Finally, the Remaining Defendants challenge fees related to the depositions of witnesses Cordova (January 19, 2016), Harms (January 27, 2016), and Rix (January 29, 2016) because those individuals appear to have no connection to the Remaining Defendants. ECF No. 194 at 23; Miller-Van Oort Decl. Ex. A at 8. The Court agrees, and thus will exclude 1.3 hours from Strauss's January 19, 2016 entry ($520.00);

1.1 hours from Strauss's January 27, 2016 entry ($440.00); and 1.4 hours from Strauss's January 29, 2016 entry ($560.00).

12.  Summary

For the reasons described above, the Court will deduct a total of $12,026.10 from Taylor's attorney's-fees request.

*C.  Adjustments to the Lodestar*

Finally, the Remaining Defendants argue that Taylor's fee award should be reduced based on Taylor's limited success in this case. ECF No. 194 at 7-11; *see also Emery*, 272 F.3d at 1047 ("[T]he fee award must be justified by the plaintiff's level of success. 'The most critical factor is the degree of success obtained.'" (quoting *Hensley*, 461 U.S. at 436)). The Court disagrees.

Had the case proceeded to trial—and had Taylor been able to prove actual damages—Taylor would likely have recovered $2,500.00 for each violation. *See Potocnik v. Carlson*, No. 13-CV-2093 (PJS/HB), 2016 WL 3919950, at *10-12 (D. Minn. July 15, 2016). According to the Remaining Defendants, there were 22 accesses that would have been the subject of trial. Angolkar Aff. ¶ 3; *see also* ECF. No. 189 at 16 (stating that there were 22 instances of alleged accesses for trial). Had Taylor proved that all 22 accesses were illegal—and had he proved that he suffered actual damages with respect to each of the 22 illegal accesses—he likely would have recovered

$55,000.00. That is $100.00 *less* than the offer of judgment that he accepted. *See* ECF No. 194 at 5; ECF No. 186-1. The result achieved by Taylor is far better than the kinds of results that have caused courts to depart from lodestars. *See, e.g., Johnson v. Bismarck Pub. Sch. Dist.*, 949 F.2d 1000, 1003 (8th Cir. 1991) (finding limited success where litigation "ended with a promise by the District to provide services that it had not previously refused to provide"); *DeGidio v. Pung*, 920 F.2d 525, 533 (8th Cir. 1990) (finding limited success where "remedial actions . . . sought at trial were not granted and injunctive relief was denied").

The Remaining Defendants point out that the amount Taylor recovered is "a very small fraction of the $965,000 he originally sought." ECF No. 194 at 10. That is true, but the vast majority of Taylor's claims were dismissed early in the litigation based on the statute of limitations. Taylor then successfully pursued his claims against the Remaining Defendants for over two years, culminating in the best result that he could have realistically expected. The Court declines to depart from the lodestar based on any purported lack of success.

For these reasons, the Court awards Taylor a total of $105,357.04 in attorney's fees.

III. COSTS

The DPPA also allows recovery of "other litigation costs reasonably incurred." 18 U.S.C. § 2724(b)(3). Taylor requests costs in the amount of $10,523.69, comprising deposition-services costs, mailing-services costs, and costs for "review of documents and consultation" by "Quinn and Associates Publishing and Consulting." Miller-Van Oort Decl. ¶ 21; *id.* Ex. C, ECF No. 191-3, at 1. The Remaining Defendants object to Taylor's request for reimbursement of $2,284.96 paid to Quinn and Associates (ECF No. 194 at 14); $215.50 in deposition-transcript costs for Sandra Johnson (*id.* at 22); and $3,496.30 in other invoices that do not identify the deposition to which the costs were attributable (*id.* at 22-23).

*A. Expert Fees*

The Remaining Defendants characterize the amount paid to Quinn and Associates as "expert fees" and object on the grounds that the DPPA "does not explicitly permit recovery of expert fees." ECF No. 194 at 14. While Taylor does not address this objection in his reply brief, Taylor's memorandum in support of his fee petition states that he seeks costs that "only relate to a proportionate amount of the . . . expert fees[.]" ECF No. 189 at 18. Further, the invoice for these fees characterizes them as fees for "expert witness rev[iew]." *See* Miller-Van Oort Decl. Ex. C at 1. As a result, the Court will treat these fees as expert fees.

This Court agrees with Chief Judge Tunheim's recent decision that expert fees are not recoverable in DPPA actions. *See Myers*, 2017 WL 1134575, at *2-3. Moreover, even if expert fees were generally recoverable, the Court would not award expert fees in this case because Taylor does not explain what Quinn and Associates is, what the firm did, or why it was necessary for Taylor's nine-member legal team to seek outside assistance. As a result, the Court rejects Taylor's request for expert fees in the amount of $2,284.96.

*B. Deposition Costs*

The remaining costs that Taylor seeks include costs for deposition and mailing services. These are costs commonly billed to clients and thus they are generally compensable. *See Ludlow*, 788 F.3d at 804 ("In general, an award of reasonable attorney's fees may include litigation expenses if it is 'the prevailing practice in a given community' for lawyers to bill those expenses separately." (quoting *Missouri v. Jenkins*, 491 U.S. 274, 287 (1989)).

Taylor has not sufficiently established Sandra Johnson's connection to the case, and therefore the Court agrees that Johnson's deposition costs cannot be taxed to the Remaining Defendants. *See* Angolkar Aff. Ex. 3. Hence, $215.50 will be deducted from Taylor's requested costs. *See* Miller-Van Oort Decl. Ex. C at 9 (Invoice No. 101298). The Court also excludes costs that are supported only by generic invoices with little or no

description of the services provided or why such services are attributable to the Remaining Defendants. *See id.* at 10-14. Accordingly, the Court will deduct the following amounts from Taylor's requested costs:

- Invoice No. 101352: $586.90 (Miller-Van Oort Decl. Ex. C. at 10);

- Invoice No. 101418: $941.70 (*id*. at 13); and

- Invoice No. 101396: $660.80 (the amount requested by Taylor) (*id.* at 12; ECF No. 189 at 8).

In addition, the Remaining Defendants seek to exclude Invoice No. 101311 for deposition services rendered on January 20, 2016, on the grounds that the invoice is vague and does not identify a deponent. ECF No. 194 at 23. The invoice does, however, attribute $270.60 to Nelson, an employee of one of the Remaining Defendants. *See* Miller-Van Oort Decl. Ex. C. at 11. The Court will therefore exclude only $1,036.30 of Invoice No. 101311 from Taylor's recoverable costs.

For these reasons, the Court awards Taylor a total of $4,707.53 in costs from the Remaining Defendants.[4]

---

[4]There appears to be a clerical error in Taylor's fee petition with respect to the cost of Jeffrey G. Kelzer's deposition services. *See* ECF No. 189 at 7. The correct amount is $452.98, not $542.98.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for an award of attorney's fees and costs under 18 U.S.C. § 2724 [ECF No. 188] is GRANTED.

2. Plaintiff is awarded $105,357.04 in attorney's fees and $4,707.53 in costs, for a total of $110,064.57, from the following defendants, jointly and severally: Cities of Bloomington, Dundas, Faribault, Lonsdale, Montgomery, Northfield, and Owatonna, and Lee Phillippe, Eric Kline, Matt Knutson, David Orr, Patrick Nelson, Mark Dukatz, Jeffrey Gigstad, Billy Houts, Steve Klostermeier, Mischelle Watkins, and Kyle Parr.

Dated: September 14, 2017         s/Patrick J. Schiltz
                                  Patrick J. Schiltz
                                  United States District Judge